UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

===================================
JAFA WILHELM individually and
on behalf of all others similarly situated

                              Plaintiff,

      -against-

COLLECTION BUREAU OF THE HUDSON VALLEY, INC.

                              Defendant.

===================================

## CLASS ACTION COMPLAINT

### *I.  Introduction*

Now comes Plaintiff, by and through her attorneys, and, for her Complaint alleges as follows:

1. Plaintiff Jafa Wilhelm brings this action to secure redress from unlawful collection practices engaged in by Defendant Collection Bureau of the Hudson Valley, Inc. ("CBHV").

2. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq. ("FDCPA").

3. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt. 15 U.S.C. Section 1692d, 1692e and 1692f.

## II.     Parties

4. Plaintiff is a citizen of the State of New York who resides within this District.

5. Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

6. Upon information and belief, Defendant's principal place of business is located in Newburgh, New York.

7. Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

8. Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

## III.     Jurisdiction and Venue

9. This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## IV.     Allegations

11. Debt collectors like CBHV, use the credit reporting mechanism as a tool to persuade consumers to pay their debts, just like dunning letters and telephone calls. "[C]redit reporting is one of the most commonly taken steps in debt collection efforts."[1]

---

[1] *Koller v. West Bay Acquisitions, L.L.C.*, 2012 WL 1189481, at *5 (N.D. Cal. Apr. 9, 2012).

12. The purpose of the credit reporting system is to both pressure and reward consumers to timely pay their debts by denying them good credit if they fall behind and allowing them good credit if they keep up.

13. The difference between a good and bad credit rating may fundamentally alter the financial outlook of individuals and families.

14. The widespread use of credit reporting, not only by financial companies but also by insurers, landlords, and employers, has effectively turned credit reporting into a broadly yet all too often <u>abused</u> tool for collection.

15. "A creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder".[2]

16. If debt collectors could just report all types of debt including erroneous, non-existent or disputed debts to the credit bureaus then any such free reign of credit reporting would enable debt collectors to effectively ruin all non-paying debtors' credit, regardless of the disputed nature of the debt.

17. This capability, had it existed would no doubt turn all debt collector credit reporting in to an effective tool of blackmail regardless of the debt's actual validity.

18. It is self-understood that had such a powerful extortion tool existed in a debt collector's arsenal, it would give the debt collector a level of leverage that is frightfully abusive and it would succeed in extracting payment from all debtors regardless of the debt's actual validity.

---

[2] *Rivera v. Bank One*., 145 F.R.D. 614, 623 (D.P.R. 1993).

19.   For this reason, Congress has placed substantial limits on the credit reporting collection tool.

20.   Under the FDCPA, debt collectors cannot hijack a debtor's credit and they certainly cannot hold a debtor's credit hostage if the debt is disputed.

21.   Debt collectors frequently will threaten to harm the consumer's credit as a cost effective way to coerce payment of any debt.

22.   However, the FDCPA requires that debt collectors advise the consumers, whose debts they seek to collect, of specified dispute rights which congress instituted with the FDCPA.

23.   The FDCPA also prohibits a debt collector from unilaterally determining the validity of any debt or dispute.

24.   The dispute rights afforded by the FDCPA just require oral or written notification of a dispute by the debtor and do not hinge on the debtor's reason for the dispute, rather the FDCPA's dispute rights give the debtor the absolute and unequivocal right to contest or dispute any debt. [3]

25.   These statutory rights protect the debtor from becoming the victim of a grueling cross-examination by the debt collector who would be inquiring as to the nature of the dispute and would unilaterally subject the debtor to a self-governing interrogation, deliberation and determination as to the disputes validity as well as the debtor's guilt or innocence.

---

[3] See. *Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004). (A consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all.); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. 111 May 23, 2002) (Imposing a requirement that a consumer have a `valid' reason to dispute the debt is inconsistent with FDCPA.)

26. Congress has identified as harmful, the failure to report a disputed debt as disputed, and, the wisdom of that policy choice which requires debt collectors to accurately report that a consumer raises a dispute does serve a purpose, and a critical one.

27. When a debt collector reports to a credit reporting agency that a debt is disputed, that notation of dispute will be reflected in the consumer's credit report; however, the report will not be so notated simply because the consumer has submitted a dispute with the credit reporting agency.

28. Therefore, only a debt-collector-acknowledged dispute, informs other creditors who view the consumer's report of the dispute and thus allows them to take the dispute into consideration when evaluating the consumer for credit granting purpose.

29. Most importantly, credit scoring models take a dispute reported by the furnisher into consideration, and <u>they ignore any debt that the furnisher has marked as disputed.</u>[4]

30. During the pendency of a dispute, the credit scoring models will not take negative information into account in calculating the credit-score if the account is disputed.[5]  See. *FTC and FRB, Report to Congress on the Fair Credit Reporting Act Dispute Resolution Process 22, n.139 (2006)*[6] (citing e-mail from Fair Isaac stating that

---

[4] The Fourth Circuit noted this fact in *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146-47 (4th Cir. 2008), finding that "if BB & T had [reported the debt as disputed], Trans Union would have reported both the debt and the dispute and would not have considered the debt in determining Saunders' total credit score. Thus, BB & T's decision to report the debt but not the dispute resulted in a much lower credit score for Saunders than a report of both the debt and the dispute."

[5] See, e.g., *Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 711–12 (S.D. Tex. 2013) ("[w]hen the dispute notations were removed, however, Toliver's credit score declined significantly. . . . [w]hen the dispute notation was added back, her credit score increased significantly.")

[6] (www.ftc.gov/os/comments/fradispute/P044808fcradisputeprocessreporttocongress.pdf)

its scoring models do take into consideration that an item is subject to a dispute that is being investigated), *available at* www.ftc.gov.

*31.*    However, this is only true if the debt collector, not the consumer, reports that the information is disputed.[7]

32.    Debt collectors like CBHV, have recognised that when debtors exercise the dispute rights afforded to them by the FDCPA, it throws a proverbial wrench into their unregulated and self governed use of the - credit reporting - weapon of mass-extortion.

33.    Under the FDCPA, "[O]nce a debt has been disputed, a debt collector cannot communicate the debt or consumer's credit information to others without disclosing the dispute... The right to dispute a debt is the most fundamental of those set forth in [the FDCPA], and it was reasonable to ensure that it could be exercised [orally] by consumer debtors who may have some difficulty with making a timely written challenge.  Such debtor consumers would also undoubtedly benefit from . . . <u>having the fact of the dispute reported whenever the debt collector communicates with others about the debt, in accordance with § 1692e(8)</u>"[8]

34.    "Collector's must communicate that a debt is disputed.  The FDCPA does not give debt collectors the authority to determine unilaterally whether a dispute has merit." [9]

35.    Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

---

[7] See *Saunders v. Branch Bank & Trust Co.*, 526 F.3d 142 (4th Cir. 2008) (When a furnisher reports an ongoing dispute by the consumer, TransUnion does not include the disputed information in assessing the consumer's credit score.)
[8] *Hooks v. Forman, Holt, Eliades & Ravin, L.L.C.*, 717 F.3d 282 (2d Cir. 2013).
[9] *Semper v. JBC Legal Group*, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005).

36. Plaintiff saw a delinquent account show up on her report and subsequently, contacted the creditor, Optimum on multiple occasions informing them that the alleged debt was invalid and that it had already been disputed by the Plaintiff.

37. The said account had been retrieved by Optimum, from the previous debt collector, Sunrise Credit Services due to the disputed nature of the debt.

38. Plaintiff subsequently settled her FDCPA claim with Sunrise Credit Services for collecting on this invalid disputed debt.

39. Sunrise agreed to remove the negative trade line and expunge this invalid debt from their system.

40. When Defendant, CBHV subsequently began collecting on the disputed debt, Optimum informed CBHV, of the disputed nature of the debt.

41. CBHV was well aware, from information it had received from both the creditor, Optimum and the previous collector, Sunrise Credit Services, that the debt had been disputed, yet the Defendant failed to communicate the disputed status of the debt.

42. When CBHV initially reported this debt CBHV violated 1692e(8) for failing to report the debt as disputed despite knowing the debts disputed status.

43. On average, a furnisher like CBHV reports over twenty pieces of information about any given debt to a credit reporting agency.

44. The Plaintiff further disputed the debt in writing on November 24, 2017, yet CBHV failed to communicate the dispute when re-reporting the said account.

45. The Defendant failed to communicate that a disputed debt is disputed, in

violation of 15 U.S.C. § 1692e(8).[10]

46.     When the Plaintiff subsequently pulled her credit report in December 31, 2017 despite the fact that Plaintiff disputed the debt via Certified Mail with the Defendant, the Defendant did report the debt, but did not report the debt as disputed and Plaintiff's credit score was severely damaged due to the failure of the Defendant to properly notate and report her dispute.

47.     Defendant was obligated to report Plaintiff's debt as disputed since it knew the debt was initially disputed and faild to report the disputed status of the debt

48.     Defendant then again engaged in a post-dispute communication with the credit bureaus and yet again failed to notate the dispute.

49.     The Plaintiff again pulled her credit report in January 2018, the Defendant continued to report the debt despite the fact that it knew that the debt was invalid.

50.     Defendant violated the FDCPA since it reported information about the debt that it knew to be false at the time that the reporting was made.[11]

51.     It is unfair and unconscionable that a debt collector can use the credit reporting tool to extract payment from debtors, yet when the consumer wishes to have his or her dispute reported to the credit reporting agency, the collector does not actually forward the dispute when communicating further.

52.     Upon information and belief, Defendant did not forward the dispute and

---

[10] Purnell v. Arrow Fin. Servs., LLC, 2007 U.S. Dist. LEXIS 7630, 2007 WL 421828 (E.D. Mich. Feb. 2, 2007). (The court stated "Congress has identified as harmful the failure to report a disputed debt as disputed, and, whatever the wisdom of that policy choice, Congress did not distinguish between communications that were intended and knowing as opposed to unintended and automatic. Indeed, the "directly or indirectly" language of Section 1692a(2) suggests that Congress saw no difference between the two. From the perspective of a consumer disputing a debt, it similarly matters not how it is that a dispute marker is lost. The harm inheres in the simple fact that information about an apparently undisputed debt in that person's name exists in the credit reporting industry, which can have untold negative consequences for people who engage in commerce.")

[11] See Janjua v. Ocwen Loan Servicing LLC, 1:14-cv-06303-CBA-JO (E.D.N.Y. Feb. 26, 2016). (Bagley, J.) ("[T]he plain language of 1692e(8), indicates that a debt collector violates this provision if it communicates information about a debt that it knows or should know to be false at the time the communication is made.")

did not take adequate measures to forward the dispute to the credit reporting agencies.

53.     Upon information and belief, Defendant and its employees intentionally denied the Plaintiff his dispute rights afforded to her under the FDCPA.

54.     Upon information and belief, Defendant and its employees failed to communicate that a disputed debt is disputed.

55.     The acts and omissions of the Defendant and its employees done in connection with efforts to collect a debt from the Plaintiff were done intentionally and willfully.

56.     Defendant failed to initially report the disputed status of the debt and then again when it communicated with the credit bureaus concerning her debt following Plaintiff's November 24, 2017 dispute letter, and when reporting the debt with the credit bureaus following its receipt of the said letter disputing the debt, the Defendant failed to report the disputed debt as disputed in violation of 15 U.S.C. § 1692e(8).

57.     Defendant re-reported the purported debt to the credit bureaus after the Plaintiff's November 24, 2017 dispute letter to the Defendant.

58.     Defendant additionally violated the FDCPA, since it reported information about the debt that it knew to be false at the time that the January 2018 reporting was made.[12]

59.     As an actual and proximate result of the acts and omissions of CBHV and its employees, Plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which she should be compensated in an amount to be established by a

---

[12] See Janjua v. Ocwen Loan Servicing LLC, 1:14-cv-06303-CBA-JO (E.D.N.Y. Feb. 26, 2016). (Bagley, J.) ("[T]he plain language of 1692e(8), indicates that a debt collector violates this provision if it communicates information about a debt that it knows or should know to be false at the time the communication is made.")

jury at trial.

60. Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

61. Plaintiff suffered actual harm by being the target of Defendant's misleading debt collection communications.

62. The Plaintiff alleges and avers that Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

63. The Plaintiff alleges and avers that Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

64. The Plaintiff alleges and avers that Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

65. The Plaintiff alleges and avers that Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to the Defendant's collection efforts.

66. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Plaintiff alleges and avers that Defendant's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

67. These deceptive communications additionally violated the FDCPA since

they frustrate the consumer's ability to intelligently choose his or her response.

68. Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment. Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including, declaratory relief, and damages.

### V. Class Allegations

69. This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

70. The identities of all class members are readily ascertainable from the records of the Defendant and those business and governmental entities on whose behalf it attempts to collect debts.

71. Excluded from the Plaintiff's Class is the Defendant and all officers, members, partners, managers, directors, and employees of the Defendant, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

72. There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the FDCPA.

73. The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

74. The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

75. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a) **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

(b) **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the FDCPA.

(c) **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Class defined in this complaint have claims arising out of the Defendant's common uniform course of conduct complained of herein.

(d) **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter.

Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

(e)     **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendant who, on information and belief, collects debts throughout the United States of America.

76.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the FDCPA, and is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

77.   Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

78. Further, Defendant has acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

79. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## VI.    FIRST CAUSE OF ACTION
*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendant.*

80. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. This cause of action is brought on behalf of Plaintiff and the members of a class.

82. The class consists of all persons whom Defendant's records reflect resided in the State of New York who communicated with Defendant's representatives within one year prior to the date of the within complaint up to the date of the filing of the complaint; and (a) when re-reporting the debt with the credit bureaus, Defendant failed to report the disputed debt as disputed; and (b) Defendant was in violation of 15 U.S.C. § 1692e(8).

## VII.    *Violations of the Fair Debt Collection Practices Act*

83. The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

84. Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in her favor and against the Defendant and award damages as follows:

    A. Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k);

    B. Attorney fees, litigation expenses and costs incurred in bringing this action;

    C. Any other relief that this Court deems appropriate and just under the circumstances.

## VIII.   SECOND CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on an individual basis*

85. Plaintiff re-states, re-alleges, and incorporates herein, any and all paragraphs in this action, that reference the Plaintiff's attempt to dispute the alleged debt and that when re-reporting the debt post-dispute to the credit bureaus, Defendant failed to report the disputed debt as disputed.

86. That on November 24, 2017 the Plaintiff mailed a letter to Defendant CBHV, disputing the validity of the debt and requesting verification thereof.

87. The Defendant failed to communicate that a disputed debt is disputed, in violation of 15 U.S.C. § 1692e(8).

### *IX.   Violations of the Fair Debt Collection Practices Act*

88.   The Defendant's actions as set forth above in the within complaint violate the Fair Debt Collection Practices Act.

89.   Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiff is entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in her favor and against the Defendant and award damages as follows:

A. Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k); And

B. Attorney fees, litigation expenses and costs incurred in bringing this action;

C. Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Brooklyn, New York
January 24, 2018

/s/ David Palace
**Law Offices of David Palace** (DP 3855)
383 Kingston Ave. #113
Brooklyn, New York 11213
Telephone: 347-651-1077
Facsimile: 347-464-0012